Reilley D. Keating, OSB No. 073762
rdkeating@stoel.com
Peter D. Sax, OSB No. 101969
pdsax@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Angela M. Taylor, CA State Bar No. 210425
*Admitted Pro Hac Vice*
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone:    (949) 851-3939
Facsimile:    (949) 553-7539
E-mail:       angelataylor@jonesday.com

Attorneys for Defendant Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| NICKALAS BRADSHAW, MEGAN BRADSHAW,<br><br>Plaintiffs,<br><br>v.<br><br>BAC HOME LOANS SERVICING, LP, a foreign corporation; TRANS UNION, LLC, a foreign company; EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation, and EQUIFAX INFORMATION SERVICES LLC, a foreign corporation.<br><br>Defendants. | Case No. 10-0438-HA<br><br>DECLARATION OF TERESA IWANSKI IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT |

## DECLARATION OF TERESA IWANKSI

I, Teresa Iwanski, declare and state as follows:

1. I am a Senior Legal and Compliance Specialist in the National Consumer Assistance Center of Experian Information Solutions, Inc. ("Experian") located in Allen, Texas. I began my employment with Experian as a Customer Service Representative in 2003. My responsibilities include processing, responding, and examining consumer complaints; verifying and updating consumers' credit profile disputes; and researching records relating to consumer complaints. Based upon my experience with Experian, I am familiar with Experian's procedures pertaining to consumer disputes, Experian's procedures pertaining to consumer requests for copies of their credit files, and with the business records maintained by Experian's National Consumer Assistance Center.

2. My duties at Experian include serving as a custodian of records on behalf of Experian with respect to entries that appear on consumer reports and credit files, as well as records of consumer inquiries. I am familiar with the manner and procedures by which the records, letters, and memoranda contained in Experian's files are prepared and maintained. Those records, letters, and memoranda are prepared by agents or employees of Experian in performance of their regular business duties. Those records, letters, and memoranda are made either by persons with knowledge of the matters they record or from information supplied by persons with such knowledge. It is Experian's regular business practice to maintain such records, letters, or memoranda in the course of its business.

3. Unless otherwise stated, the facts set forth herein are based upon my personal knowledge and, if I were called upon to testify to them, I could and would competently do so.

### About Experian Information Solutions, Inc.

4. Experian operates a consumer credit reporting agency pursuant to the Fair Credit Reporting Act (the "FCRA"). As a consumer credit reporting agency, Experian acts as a conduit

of credit information that is pertinent to prudent credit granting and related decisions. Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions. Thus, Experian does not originate or create any credit information and Experian does not make loans or decide who should receive credit. Both of those functions are handled entirely by the credit granting industry, over which Experian has no control.

5. Experian essentially acts as a storehouse of credit information by storing, retrieving, and furnishing data as allowed by the FCRA and similar state laws. Credit grantors report credit information to Experian called "trade lines" that consist of credit account information such as account number, account status, and balance information. Along with the trade lines, credit grantors report certain consumer identifying information associated with the trade line.

6. After the credit data is received by Experian and before it is added to a consumer's credit file, the information is subjected to rigorous quality control and statutory compliance procedures to ensure that only accurate information is reported. Automated procedures are designed to make certain that no information that would violate the prescriptions of the FCRA or similar state statutes will be reported on any consumer's credit report. A "credit report" is a disclosure of credit information to a credit grantor for the purpose of evaluating a consumer's credit. In contrast, when a consumer seeks access to his or her credit information directly from a credit reporting agency, the resulting document is called a "file disclosure."

7. Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information. These procedures include (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy

of information Experian reports; and (4) working with consumers to proactively prevent errors in consumer credit reports.

8.  Recognizing that no system can be entirely flawless, Experian has developed detailed procedures for providing consumers with access to their credit files and means to request reinvestigations if they disagree with items appearing in their credit files. Experian has also implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Experian in the overall process that assures the maximum possible accuracy of such reports.

9.  Consumers who disagree with the accuracy or completeness of any items of credit information reported in their credit file can submit disputes of those items directly to Experian. Indeed, Experian actively encourages consumers to request file disclosures, review them, and submit disputes of any items claimed to be inaccurate or incomplete in order to assure that the information reported by Experian is as accurate as possible.

10. Experian does not have access to creditors' records. Therefore, Experian reinvestigates disputed items generally by contacting the sources of the disputed information, explaining the consumer's disputes, and asking for a response concerning the accuracy of the disputed items. When a consumer disputes an item on her credit report, Experian sends (either manually or electronically) to the creditor a "Consumer Dispute Verification" (if manually, "CDV" and if automatically, "ACDV"). The CDV identifies the consumer and the basis for her dispute and asks the creditor to "verify" the information reported. The CDV obligates the furnisher to re-check its records to ensure that the information is being reported correctly by Experian. The creditor then returns the CDV to Experian, instructing Experian either to leave the item as it is, to delete the item, or to change it in some specified manner. Experian acts accordingly, and then sends the consumer a summary reflecting the results of the reinvestigation. When the CDV either (1) is not returned within a reasonable time; (2) does not verify Experian's

information; or (3) contains information which Experian determines renders the response unreliable, the disputed information is removed from the consumer's credit file.

11. At the conclusion of the reinvestigation, consumers are advised of the results of Experian's reinvestigation. Results of an reinvestigation typically are reported by sending the consumer a summary reflecting the status of the items disputed following Experian's reinvestigation.

## Plaintiffs' Contacts with Experian

12. I am familiar with the contacts Plaintiff Nikalas and Megan Bradshaw ("Plaintiffs") made with Experian concerning their Bank of America account.

13. Plaintiffs contacted Experian via mail in November 2009 to dispute the reporting of the Bank of America account. In their identical dispute letters, Plaintiffs explained that they had been offered a home loan modification by Countrywide. The dispute letters stated that "[c]ontrary to what is being reported, we have paid the amount we were instructed on-time, every month." The dispute letters also requested that Experian "correct our credit report back to its positive state showing that we have never missed a payment or paid late." Attached to the dispute letters was a copy of the correspondence Plaintiffs received from Countrywide dated March 13, 2009, a copy of the loan modification agreement signed only by Plaintiffs, and an online print-out of Plaintiffs' payment history on the disputed account. A true and correct copy of Plaintiff Nikalas Bradshaw's November 30, 2009 dispute letter with attachments is attached hereto as Exhibit A. A true and correct copy of Plaintiff Megan Bradshaw's November 30, 2009 dispute letter with attachments is attached hereto as Exhibit B

14. Neither of Plaintiffs' November 30, 2009 dispute letters explained that the loan modification had not been approved by Bank of America. The dispute letters also made no mention of the fact that Plaintiffs did not make a payment in April 2009 and August 2009 or that Plaintiffs had been paying less than the full monthly balance since May 2009.

15. Upon receipt of Plaintiffs' dispute letters dated November 30, 2009, Experian commenced a reinvestigation of Plaintiffs' disputes by sending ACDVs to Bank of America. In the "Dispute Reason" box of the ACDV, Experian used the distinct industry dispute code 106 to convey Plaintiffs' disputes to Bank of America. Dispute code 106 requests that the data furnisher check the on-file current status of the disputed account as well as the on-file history grid that displays the account history.

16. On December 14, 2009, Bank of America responded to Experian via ACDV and told Experian that the Bank of America account was accurate as of the date reported. That same day, Experian sent the results of its investigations to Plaintiffs, which showed that the Bank of America account had been verified by Bank of America as accurate.

17. Plaintiffs contacted Experian via mail in February 2010 to make a second dispute of the Bank of America account. True and correct copies of the dispute letters dated February 16, 2010 and supporting documentation Experian received from Nikalas Bradshaw and Megan Bradshaw are attached as Exhibits "C," and "D," respectively. The same documents enclosed in Plaintiffs' November 2009 dispute letters were enclosed in their February 2010 letters. As with Plaintiffs' November 2009 dispute letters, the February 2010 dispute letters did not explain that the loan modification had not been approved by Bank of America.

18. Upon receipt and review of Plaintiff Megan Bradshaw's February 2010 dispute, an Experian agent submitted a second ACDV to Bank of America on February 23, 2010. In the "Dispute Reason" box of the ACDV, Experian again used the Dispute code 106 to request that the data furnisher check the on-file current status of the disputed account as well as the on-file history grid that displays the account history. Bank of America responded to this ACDV on

February 24, 2010 by once again verifying that the account was reporting accurately. Experian mailed the results of this reinvestigation to Megan Bradshaw on February 24, 2010.

19. Upon receipt and review of Plaintiff Nikalas Bradshaw's February 2010 dispute letter, a different Experian agent determined that that an identical dispute and reinvestigation was made in December 2009 and that a second external investigation of the same dispute was not necessary. Experian sent Nikalas Bradshaw a letter on February 24, 2010 notifying him as such and advising him to provide any additional relevant information to Experian in support of his dispute.

20. Experian received no further disputes from Plaintiff until its receipt of this lawsuit in April 2010. In response to this lawsuit, Experian conducted an additional investigation of the disputed Bank of America account by sending ACDVs to Bank of America for both Plaintiffs on July 20, 2010. On July 26, 2010, Bank of America responded by verifying that the Bank of America account was reporting accurately with a past due balance and a delinquent payment history. In December 2010, Experian received an instruction from Bank of America to update the account to reflect no past due balance and no delinquencies on the account for each Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was made this 21st day of June, 2011, in Allen, Texas.

*[signature]*
Teresa Iwanski

## CERTIFICATE OF SERVICE

I, Angela M. Taylor, declare:

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 3161 Michelson Drive, Suite 800, Irvine, California 92612. On June 22, 2011, I served a copy of the **DECLARATION OF TERESA IWANSKI IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT** by electronic transmission.

I am familiar with the United States District Court of Oregon's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the following CM/ECF users were served:

| | |
|---|---|
| Justin M. Baxter<br>Baxter & Baxter, LLP<br>8835 S.W. Canyon Lane<br>Suite 130<br>Portland, OR 97225-3429<br>(503)297-9031<br>(503) 291-9172 (fax)<br>justin@baxterlaw.com<br>Attorneys for Plaintiff | William R. Brown<br>Breanne J. Strubinger<br>Schuckit & Associates, PC<br>4545 Northwestern Drive<br>Zionsville, IN 46077<br>(317) 363-2400<br>(317) 363-2257 (fax)<br>wbrown@schuckitlaw.com<br>bstrubinger@schuckitlaw.com<br>Attorneys for Trans Union, LLC |

Executed on June 22, 2011, at Irvine, California.

/s/ Angela M. Taylor<br>
Angela M Taylor