UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NICKALAS BRADSHAW, and                                   Civil No. 3:10-438-HA
MEGAN BRADSHAW,

        Plaintiffs,                                      OPINION AND ORDER

        v.

BAC HOME LOANS SERVICING, LP,
a foreign corporation; TRANS UNION,
LLC, a foreign company; EXPERIAN
INFORMATION SOLUTIONS, INC., a
foreign corporation; and EQUIFAX
INFORMATION SERVICES, LLC, a
foreign company;

        Defendants.
_____

HAGGERTY, District Judge:

        Plaintiffs filed this action after they applied for a home loan modification.  Plaintiffs have

settled their claims with defendants BAC Home Loans Servicing, LP (BAC) and Equifax

Information Services, LLC (Equifax).  Plaintiff's First and Second Claims for Relief against

defendants Trans Union, LLC (Trans Union) and Experian Information Solutions, Inc. (Experian)

for violations of the Fair Credit Reporting Act (FCRA) remain pending.

1 - OPINION AND ORDER

Defendants separately move for summary judgment on all claims filed against them in plaintiff's Complaint. The parties have submitted extensive briefing on these motions. After reviewing the briefing, the court has determined that oral argument on these motions is unnecessary. For the following reasons, defendant Trans Union's Motion for Summary Judgment [57] is GRANTED IN PART AND DENIED IN PART, and defendant Experian's Motion for Summary Judgment [60] is GRANTED IN PART AND DENIED IN PART.

**STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824-25 (9th Cir. 2011).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine dispute for trial. *Id.* at 248-49. All reasonable doubt as to the existence of a genuine factual dispute should be resolved against the moving party. *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).

**BACKGROUND**

The following facts are undisputed unless otherwise noted, and are stated in a light most favorable to plaintiffs, the non-moving parties.

2 - OPINION AND ORDER

Defendants Trans Union and Experian are consumer reporting agencies, as defined in the FCRA, 15 U.S.C. § 1681a(f). They regularly assemble or evaluate consumer credit information that they receive from credit grantors, and then furnish consumer reports to third parties. In furnishing consumer credit reports, defendants are subject to the requirements of the FCRA.

When a consumer disagrees with the accuracy or completeness of information reported on a credit report, he or she may send a dispute to Trans Union or Experian. In response, defendants will send a manual or automated consumer dispute verification (ACDV) to the credit grantor identifying the disputed item, listing the basis of the dispute, and asking the credit grantor to verify the accuracy of the information reported. The credit grantor will respond to the request by either confirming the information, or instructing defendants to change or delete the disputed item. Defendants then send a report to the consumer explaining the outcome of the investigation.

Plaintiffs are consumers who purchased a home in Tigard, Oregon in 2005. Approximately two years later, they refinanced their mortgage with Countrywide Bank (Countrywide). In March 2008, plaintiffs applied for a home loan modification with Countrywide. Plaintiffs regularly made their monthly payments through March 2009. When plaintiffs contacted Countrywide to inquire about the status of the modification, they were told that their application was pending.

One year after applying for the modification, plaintiffs received a letter from Countrywide. The letter dated March 13, 2009 provided:

> We are pleased to advise you that your modification has been approved. In order for the modification to be valid, the enclosed documents need to be signed and returned. . . .
>
> Your new modified monthly payment will be $1,371.30, effective with your May 1, 2009 payment. . . .

3 - OPINION AND ORDER

> Your new reduced interest rate will be effective as of April 1, 2009 and it
> will remain in effect until May 1, 2037.

Iwanski Decl. [63] at Ex. A, p. 5.  The letter explained that the offer could be terminated by

Countrywide if any issues arose before all of the terms and conditions were finalized, and that the

offer "does not stop, waive or postpone the collection actions, or credit reporting actions we have

taken or contemplate taking against you and the property."  *Id.* at Ex. A, p. 6.  The parties

disagree as to whether this letter formally approved the requested modification, or simply

constituted an offer for a modification.  Plaintiffs signed the agreement, but never received a

copy of the agreement signed by Countrywide.

When plaintiffs received their next monthly mortgage statement, it did not reflect the

lowered monthly payment listed in the March 2009 letter.  Instead, plaintiffs' mortgage

statements continued to show a required payment of $1,515.54 per month.  Plaintiffs contacted

Countrywide and were advised that the modification was pending.  Plaintiffs contend that

customer service employees at Countrywide instructed them to pay the modified loan amount

while the modification was being processed.  Plaintiffs were also allegedly instructed not to make

a payment in April 2009.  Plaintiffs did not submit a mortgage payment for the month of April

2009, and plaintiffs paid $1,371.30 for the months of May, June, and July 2009.  Plaintiffs made

a payment in August 2009, but it was not initially reflected in their transaction report from Bank

of America.

At some point, Bank of America purchased Countrywide, and Bank of America's

servicer, BAC, began servicing plaintiffs' mortgage.  Bank of America ultimately rejected

plaintiffs' application for a loan modification.  Plaintiffs were advised that the modification

should not have been approved, and they owed a past due amount and late payment penalties on their mortgage account.

In November 2009, plaintiffs sent online requests for a copy of their individual consumer disclosures and initiated an online dispute of their accounts with Trans Union. The online dispute requests explained that their account was "never late." Trans Union accordingly submitted ACDVs for each plaintiff to BAC. BAC verified that both reports were accurate. Trans Union forwarded the information to plaintiffs and notified them of their right to add a consumer statement to their files.

Plaintiffs then sent letters in November 2009 to both defendants disputing the accuracy of their credit reports. Plaintiffs included copies of the March 2009 letter from Countrywide, a loan modification agreement signed by plaintiffs, and a transaction history from BAC showing mortgage payments from June 2008 through November 2009. The modification agreement had not been signed by Countrywide or Bank of America, and the transaction report indicated that no payments had been made in April or August 2009. Defendants sent ACDVs to BAC to verify the account information. BAC again confirmed that the reports were accurate.

Plaintiffs sent a second set of dispute letters in February 2010. Trans Union again sent ACDVs regarding both plaintiffs to BAC to verify the account information. Experian, however, sent a third ACDV to BAC only on behalf of Megan Bradshaw. Experian notified Nickalas Bradshaw that it would not investigate his dispute again. BAC responded to both defendants and confirmed that the reports were accurate.

During this time, plaintiffs were denied credit by Simmons First National Bank (Simmons) and Discover Financial Services (Discover), and allegedly received an inflated automobile insurance quote from Amica Mutual Insurance Company (Amica). Both plaintiffs

5 - OPINION AND ORDER

allege that they suffered significant stress and embarrassment due to defendants' conduct.  Megan Bradshaw was also hospitalized following a collapse that was allegedly caused by this stress. Plaintiffs subsequently filed this lawsuit.

## DISCUSSION

The FCRA was enacted to ensure that consumer reporting agencies (CRAs) adopt reasonable procedures for meeting the needs of commerce that also fairly and equitably provide for confidentiality, accuracy, relevancy, and proper utilization of consumer information.  15 U.S.C. § 1681(b).  The act expressly creates a private right of action against a CRA for its negligent or willful violation of any duty imposed under the FRCA.  15 U.S.C. §§ 1681n, 1681o; *Gorman v. Walpoff & Abramson*, 584 F.3d 1147, 1154 (9th Cir. 2009) (citations omitted).

Plaintiffs' Complaint alleges that defendants willfully and negligently failed to comply with the requirements of the FCRA by (1) failing to follow reasonable procedures, and (2) failing to comply with the reinvestigation provisions.  *See* 15 U.S.C. §§ 1681e(b), 1681i.  Defendants seek judgment on both claims as a matter of law.

### 1.    Reasonable Procedures

The FCRA provides that whenever a CRA prepares a consumer credit report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  If a consumer's report contains an inaccuracy, the CRA who generated the inaccurate report may be held liable only if it failed to follow reasonable procedures.  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).   Generally, a jury should determine whether a CRA's procedures were reasonable and properly followed.  *Id.*

To make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a CRA prepared a report containing inaccurate information. *Id.* (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). An item on a credit report is considered "incomplete or inaccurate" under the FCRA if "it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (internal quotation marks omitted).

The parties contest the accuracy of plaintiffs' credit report. Plaintiffs contend that the BAC account was always inaccurately reported because they never missed a required payment and consistently paid the amount owed. They assert that their modified loan agreement with Countrywide reduced their monthly mortgage payment so they should not have incurred any late fees or a past due balance. Defendants respond that they accurately reported the BAC account because plaintiffs' loan modification was never approved by BAC, plaintiffs admit that they only paid the reduced amount on their mortgage in May 2009 through June 2009, and plaintiffs admit that they did not make a payment in April 2009. Alternatively, defendants assert that plaintiffs' dispute with BAC regarding the validity of their loan modification is a legal issue that defendants are not obligated to resolve.

This court agrees that defendants were not qualified to evaluate the legal status of plaintiffs' loan modification. Defendants were not parties to the loan agreement, and had no means outside of the information they received from plaintiffs and BAC to determine whether the loan modification had in fact been approved. This court, however, cannot conclude that plaintiffs' credit reports were accurate as a matter of law.

Although defendants heavily rely on *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010), this case is factually distinguishable. In *Carvalho*, the consumer sought medical

treatment from a clinic and signed a billing agreement for her treatment. *Id.* at 882. The agreement provided that the clinic would bill the consumer's insurance as a courtesy, but any balance unpaid after ninety days would become the consumer's responsibility. *Id.* When the consumer's insurance failed to pay for her services, the clinic sent a bill to the consumer for $118. *Id.* Despite receiving the bill and a "final notice" from the clinic, the consumer failed to pay the balance. *Id.* The clinic then assigned the debt to a collection agency who, after requesting payment and providing notice of the debt to the consumer, reported the debt to the major CRAs. *Id.* When the consumer later disputed the debt to the CRAs, she explained that her insurance had wrongfully failed to pay the bill. *Id.* The consumer agreed that all the data on her credit report pertaining to the medical debt was technically accurate, but she argued that it was latently misleading because she was not obligated to pay the debt. *Id.* at 891.

The Ninth Circuit rejected the consumer's argument, explaining that CRAs are not obligated to adjudicate a consumer's legal dispute regarding the validity of a debt. *Id.* The court noted that the consumer agreed that the debt pertained to services she received, and that the amount of the debt, the amount past due, and all the material dates were correctly reported on her credit report. *Id.* Accordingly, the Ninth Circuit held that the consumer's belief that she had a legal defense to the debt was irrelevant to the accuracy of her report. *Id.* Moreover, the court opined that if a consumer defaults on a debt—even if he or she had a legitimate reason—the default is a relevant matter concerning the consumer's creditworthiness that is precisely the type of information that credit reports are intended to supply. *Id.* (citation omitted).

Unlike the consumer in *Carvalho*, plaintiffs make several factual disputes concerning the BAC account. Plaintiffs allege that they paid their mortgage on time, in contrast to the multiple listings of late payments, and that the reported monthly payment amount and amount past due are

8 - OPINION AND ORDER

too high.  Plaintiffs received inconsistent information from Countrywide and BAC payment regarding the status of the loan modification and the effect the alleged modification approval had on plaintiffs' monthly payments.  Viewing the facts in a light most favorable to plaintiffs, they entered a binding modification agreement with Countrywide that enabled them to lower their monthly mortgage payments, and plaintiffs consistently paid the lowered amount on time every month starting in May 2009.  Plaintiffs also allegedly complied with instructions from Countrywide that they should not submit a payment in April 2009 to allow the modification to kick in.  If a credit report is intended to reflect a consumer's likelihood of default on his or her debts, then information showing that plaintiffs were more than 120 days late in paying their mortgage even though they made a timely payment each month is misleading at best.  This court therefore finds that a factual dispute exists regarding the accuracy of plaintiffs' reports.

At some point, plaintiffs received a statement from BAC correcting the delinquent information on the account.  Dep. of N. Bradshaw at 160.  Although the exact timing of the change in status is unclear, BAC notified defendants after this litigation was filed that the account information should be modified to delete any derogatory information.  Plaintiffs contend that BAC's decision to modify the account status conclusively proves that the BAC account was inaccurately reported by defendants.  Defendants respond that the settlement between BAC and plaintiffs likely caused the change in plaintiffs' account status, and suggest that plaintiffs are attempting to mislead the court.[1]

---

[1] Trans Union notified the court that BAC has agreed to waive its confidentiality regarding the settlement agreement between BAC and plaintiffs.  Without a motion to compel the production of the settlement agreement or any indication that plaintiffs also agree to waive confidentiality, BAC's acknowledgment is irrelevant.  This court declines to *sua sponte* require plaintiffs to produce the settlement agreement.

This court finds that the updated account status is not dispositive as to the accuracy of the BAC account.  BAC's decision to correct the account could be due to a number of reasons, including BAC's belief that granting the original loan modification is now in its best interest. The accuracy of plaintiffs' credit reports remains a factual question to be determined by a jury.

Additionally, because the parties dispute whether defendants implemented and followed reasonable procedures to assure maximum possible accuracy, the court cannot dispose of this claim on summary judgment.  *See Guimond*, 45 F.3d at 1333 ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.").

**2.      Reinvestigation**

Plaintiff also brings a claim under the FCRA's reinvestigation provision.  Pursuant to §1681i, a CRA must reasonably reinvestigate an item in a consumer's credit file once the consumer directly notifies the agency of a possible inaccuracy. 15 U.S.C. § 1681i(a)(1)(A).  This provision also requires a CRA to review and consider all relevant information submitted by the consumer, promptly provide the credit grantor of the disputed item with all relevant information regarding the dispute, and then promptly delete or modify the item based on the results of the reinvestigation.  15 U.S.C. §§ 1681i(a)(2)(B); 1681i(a)(4); 1681i(a)(5)(A).  To state a claim under § 1681i(a), plaintiffs must establish that: (1) their credit files contained inaccurate or incomplete information; (2) they notified defendants directly of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) defendants failed to respond to the dispute; and (5) defendants' failure to reinvestigate caused plaintiffs to suffer actual damages.  *Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002) (citations omitted).

For the reasons previously discussed, plaintiffs have met their prima facie showing of inaccuracy. Defendants do not dispute that plaintiffs sent letters to defendants notifying them of relevant, allegedly inaccurate information. The decisive inquiry now becomes whether defendants could have uncovered the inaccuracies "if it had reasonably reinvestigated the matter." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (3d Cir. 2008) (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

Again, factual issues preclude summary judgment as to whether a reasonable reinvestigation could have discovered the inaccuracies in plaintiffs' reports. Defendants did not completely fail to investigate the dispute, or ignore an unambiguous public record. *Cf. Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070-71 (9th Cir. 2008) (granting summary judgment for the consumer where the CRA failed to perform a simple search and overlooked an unambiguous document in the court file showing that no adverse judgment had been entered against the consumer). Defendants instead utilized an automated dispute system to verify the accuracy of plaintiffs' account.

Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation. *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083-84 (D. Or. 2007) (discussing cases); *see also Cushman*, 115 F.3d at 225 ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D. N.M. 2006) (noting that CRAs may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that the information is disputed); *Lambert v.*

11 - OPINION AND ORDER

*Beneficial Mortg. Corp.*, No. 3:05-cv-05468-RBL, 2007 WL 1309542, at *4-5 (W.D. Wash. May 4, 2007) (finding a question of fact as to whether the ACDV sent by the CRA contained sufficient information to comply with its reinvestigation duties).

BAC received its first set of ACDVs in this case from Trans Union in November 2009 following plaintiffs' online inquiry. The ACDV was given a dispute code, noting that plaintiffs disputed the account status, payment history, and payment rating, and asking BAC to verify the payment history profile, account status, and payment rating. Reger Decl. at Ex. 5, 6 ("Disputes Present/Prev Acct Status. Pymt Hist Profile. Pymt Rating. Verify Pymt Hist Profile. Acct Status and Rating.").

In December 2009, Experian and Trans Union sent ACDVs to BAC after receiving dispute letters and documents from plaintiffs. The same dispute codes were given, but defendants entered additional information in the comments section. On behalf of Megan Bradshaw, Experian wrote: "RCVD BANK OF AMERICA TRNSCTN HSTRY SHOWING PYMNTS FROM 11/13/09 TO 06/04/08 [sic]." Iwanski Decl. [66] at Ex. B. Experian's ACDV on behalf of Nickalas Bradshaw noted: "HAD A NEW PYMNT AGREEMENT WITH BOA. RCVD MODIFICATION AGREEMENT DTD 03/21/09. HAD TO PAY $1.371 MONTHLY." Iwanski Decl. [66] at Ex. I. Trans Union's ACDVs on behalf on both plaintiffs stated: "Claims Company Will Change. Verify All Account Information . . . Unable to authenticate documentation dated 03/13/2009." Reger Decl. at Ex. 12, 13.

In February 2010, Experian changed the comments for Megan Bradshaw to: "RCVD LOAN MDFCTION AGRMNT 03/13/09 COUNTRYWIDE LTTR 03/13/09 STTG LOAN MODIFICATION HAS BEEN APPROVED." Iwanski Decl. [66] at Ex. D. Experian did not

send another ACDV on behalf on Nickalas Bradshaw because it "already investigated this
information and the credit grantor has verified its accuracy." Iwanski Decl. [66] at Ex. K.
Trans Union again sent ACDVs stating: "Claims Company Will Change. Verify All Account
Information . . . Unable to authenticate documentation dated 03/13/2009." Reger Decl. at Ex. 18,
19.

  After reviewing these ACDVs, this court cannot conclude that defendants' investigations
were reasonable as a matter of law. The ACDVs listed only a general reason why plaintiffs were
disputing the payment information on their account and did not fully summarize the nature of
plaintiffs' dispute. *Cf. Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 WL 22287351, at *1
(N.D. Ill. Oct. 2, 2003) (upholding the ACDV process where a CRA advised the creditor of the
consumer's specific complaint, namely that he returned his cable box to the company). The
comments also did not describe the contents of the documents submitted with plaintiffs' dispute
letters in a manner that would alert BAC of the alleged inaccuracy. Trans Union provided no
description of the documents beyond the date of Countrywide's letter, and only noted that it could
not authenticate the letter. Experian provided a brief description of one of the documents in its
ACDVs, but never explained that more than one document had been submitted by plaintiffs, or
the relation of the documents to plaintiffs' dispute. Further, neither defendant sent anything other
than an automated request to BAC.

  The documents submitted by plaintiffs, while not dispositive regarding the status of the
BAC account, showed when plaintiffs made payments on their mortgage, indicated that no late
fees or other penalties had been assessed, and explained that plaintiffs had been approved for a
loan modification with lowered monthly payments. On this record, it is possible that a more
detailed description of the true nature of plaintiffs' dispute and the accompanying documents

would have prompted BAC to thoroughly investigate the status of plaintiffs' account. A reasonable jury could infer that defendants' reinvestigations were unreasonable based on defendants' exclusive reliance on an automated system and its failure to provide BAC with a detailed summary of plaintiffs' letters and supporting documentary evidence.

This court rejects plaintiffs' argument that defendants were required to send physical or digital copies of plaintiffs' documents to BAC. The FCRA does not expressly requires a CRA to forward documents submitted by consumers to data furnishers. *Paul v. Experian Info. Solutions, Inc.*, _ F. Supp. 2d _, 2011 WL 2515960, at *5 (D. Minn. June 22, 2011) (citing cases and Fed. Trade Comm'n, Report to Congress on the Fair Credit Reporting Act Dispute Process 34 (Aug. 2006)). Moreover, BAC lacked the means to receive or view digital copies of dispute letters at that time. Dep. of Reger at 44-48.

### 3.    Damages and Causation

This court has determined that claims for negligent violation of the FCRA necessarily require proof of damages and causation. *Saenz*, 621 F. Supp. 2d at 1082. Recovery of damages is not merely predicated on evidence of a denial of credit. *Guimond*, 45 F.3d at 1333. Actual damages resulting from fees incurred in requesting credit reports, emotional distress, and humiliation are also recoverable. *Id.* To create an issue of fact as to causation, a plaintiff must produce evidence that the alleged inaccurate entry was a "substantial factor" in the denial of credit, adverse credit, or other harm. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 968-69 (3d Cir. 1996). Where the issue of damages depends on whether a violation of the FCRA occurred, the question of damages is generally reserved for the jury. *Cairns v. GMAC Mortg. Corp.*, No. CIV 04-1840-PHX-SMM, 2007 WL 735564, *7 (D. Ariz. Mar. 5, 2007).

### A.    Credit denials

Plaintiffs have provided sufficient evidence to raise a triable issue as to whether Nickalas Bradshaw was damaged by credit denials due to Trans Union's allegedly inaccurate reporting. Plaintiffs have produced letters from Simmons First National Bank and Discover Financial Services listing Trans Union as the CRA they utilized in obtaining information on Nickalas Bradshaw's creditworthiness.  N. Bradshaw Decl. at Ex. 8, Ex. 9.  A reasonable trier of fact could infer that Trans Union's allegedly inaccurate reporting was a substantial factor in these credit grantors' decisions to deny credit to Nickalas Bradshaw.

Plaintiffs provide no evidence that Experian's reporting caused damages in the form of adverse credit to either plaintiff.  However, because Experian has not raised this argument in its motion, the court declines to discuss it any further.

### B.    Insurance quote

Plaintiffs received an automobile insurance quote from Amica on January 7, 2010 in the annual amount of $6,507.  Trans Union Mem. at Ex. J.  The letter from Amica indicates that the quote "is based on the information [plaintiffs] provided to [Amica]."  *Id.*  Neither defendant is referenced in the documents from Amica, and no inquiries are listed on plaintiffs' credit files from Amica.  *See* Trans Union Mem. at Ex. F, I, J.  Plaintiffs have presented no evidence tending to show that the allegedly inflated quote was based on information reported by either defendant. Defendants are granted summary judgment as to damages based on the Amica quote.

### C.    Emotional distress

Both plaintiffs contend that they suffered stress and embarrassment from the negative information listed on their reports and being denied credit.  Megan Bradshaw also declares that she collapsed due to the significant stress she incurred in dealing with defendants.  She

15 - OPINION AND ORDER

overexerted herself while running, and needed to be hospitalized for one night.  Dep. of M.

Bradshaw at 81-82.  At that time, she was running five to fourteen miles a day, and was training

for a half-marathon.  *Id.* at 82.  In her discharge report, the doctors opined that her collapse was

likely due to physical exertion and dehydration.  *Id.* at 87.  Plaintiffs did not seek any other

professional treatment for their alleged emotional distress.

The Ninth Circuit has not specifically addressed what evidence is required to support an

award of emotional distress damages under the FCRA.  *Acton v. Bank One Corp.*, 293 F. Supp.

2d 1092, 1101 (D. Ariz. 2003).  However, it has explained in other contexts that objective

evidence is not a requirement for emotional distress damages in the Ninth Circuit or the Supreme

Court.  *Id.* (citing *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003);

*Johnson v. Hale*, 13 F.3d 1351, 1352-53 (9th Cir. 1994)).  Accordingly, plaintiffs' description of

the emotional distress they both suffered due to their credit denials is sufficient to create a

question for a jury when it is viewed in the light most favorable to plaintiffs.

### 4.    Punitive damages

The FCRA also provides for punitive damages against any person who willfully fails to

comply with any requirement of the FCRA.  15 U.S.C. § 1681n(1).  A willful violation includes

both knowing violations and actions taken in reckless disregard of a FCRA requirement.  *Safeco*

*Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  An action is considered reckless if it carries "an

unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* at

68.  Therefore, a defendant may be liable for a reckless violation of the FCRA if its action "is not

only a violation under a reasonable reading of the statute's terms, but shows that the [defendant]

ran a risk of violating the law substantially greater than the risk associated with a reading that

was merely careless."  *Id.* at 69.

Here, defendants elected to comply with their FCRA obligations by providing general descriptions of plaintiffs' dispute through an automated system.   As this court explained in *Saenz*, a reasonable jury could find that a CRA acted in reckless disregard of its duties by relying exclusively on automated procedures that have been held to be unreasonable by numerous court decisions when the CRA was on notice of the possible inaccuracy of the automated responses. *Saenz*, 621 F. Supp. 2d at 1088.  Therefore, this claim must also be decided by a jury.

## CONCLUSION

For the reasons provided, defendant Trans Union's Motion for Summary Judgment [57] is GRANTED IN PART AND DENIED IN PART, and defendant Experian's Motion for Summary Judgment [60] is GRANTED IN PART AND DENIED IN PART.  Defendants are granted summary judgment as to damages based on the Amica quote, and as to plaintiffs' claim that defendants were required to send physical or digital copies of plaintiffs' documents to BAC.

IT IS SO ORDERED.

DATED this 27th day of September, 2011.


   /s/ Ancer L. Haggerty
          Ancer L. Haggerty
   United States District Judge

17 - OPINION AND ORDER